[Cite as *Williams v. Dayton Water*, 2020-Ohio-4332.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| TRAVIS LANIER WILLIAMS | : | |
| | : | Appellate Case No. 28686 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2019-CV-4918 |
| v. | : | |
| | : | (Civil Appeal from |
| CITY OF DAYTON WATER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of September, 2020.

. . . . . . . . . . .

TRAVIS LANIER WILLIAMS, 1955 Kipling Drive, Dayton, Ohio 45406
        Plaintiff-Appellant, Pro Se

MARTIN W. GEHRES, Atty. Reg. No. 96711, Assistant City Attorney, City of Dayton
Attorney's Office, 101 West Third Street, P.O. Box 22, Dayton, Ohio 45401
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Travis Lanier Williams appeals from the dismissal of his action against the City of Dayton, Department of Water, claiming that the City should have accepted his international bills of exchange as payment for his water bills. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} Williams's complaint consists of a short civil complaint form and several attachments. From these documents, we glean the following facts.

{¶ 3} Williams received a bill in the amount of $187.42 from the City of Dayton's Department of Water. On September 26, 2019, in response to that bill, Williams sent the Department a self-prepared international bill of exchange, drawn on the United States Department of Treasury, for that amount. The City did not accept the purported bill of exchange as payment.

{¶ 4} On October 22, 2019, Williams received a notice from the Department of Water that the bill for water service for June 11, 2019 to September 11, 2019 remained unpaid and that service would be discontinued if payment were not received. On October 23, 2019, Williams mailed a second self-prepared international bill of exchange in the amount of $194.18, again drawn on the United States Department of Treasury, to the Department. That purported bill of exchange also was not accepted as payment.

{¶ 5} The same day (October 23), Williams filed a complaint in the Montgomery Court of Common Pleas against the City, claiming that the City should have accepted his bills of exchange as legal tender and payment for his water bills. He cited to 12 U.S.C. 95a as support. Williams asserted that by not discharging his obligation (the water bill),

the City dishonored the bills of exchange in violation of his rights pursuant to R.C. 1.22 (change in judicial construction does not affect prior valid obligations), R.C. 1.03 (definition of "anything of value"), and R.C. 1303.61 (presentment of instruments).

{¶ 6} The City responded to the complaint with a motion to dismiss pursuant to Civ.R. 12(B)(6). The City argued that Williams's "hand drafted 'bill of exchange' [was] not a legitimate negotiable instrument" and that the documents were "nothing more than a meaningless piece of paper." The City noted that several courts have found similar claims to be frivolous and that the United States Department of Treasury has issued an alert about fraudulent bills of exchange.

{¶ 7} Williams did not respond to the motion to dismiss.

{¶ 8} On December 20, 2019, the trial court granted the City's motion to dismiss. First, the court noted that one Ohio court had held that a presented International "Bill of Exchange" was not a proper payment for a mortgage to prevent a foreclosure order. *Bank of N.Y. v. Markos*, 10th Dist. Franklin No. 05AP-906, 2006-Ohio-2073. Second, the court noted the numerous cases cited in the City's motion, all of which held that a dismissal of a case is proper under Fed.R.Civ.P. 12(b)(6) when a "bill of exchange" is at issue. The court quoted *Bryant v. Washington Mut. Bank*, 524 F.Supp 2d 753 (W.D. Va. 2007) for its summary of the "redemption theory" underlying the use of purported bills of exchange. The trial court further indicated that the *Bryant* court had dismissed this theory as "nonsense in almost every detail," *id.* at 760, and had warned the debtor that "people frequently end up in prison" for passing bills of exchange drawn against the U.S. Treasury. *Id.* at 763. Finally, the trial court noted that the United States Treasury Department had issued an alert about fraudulent bills of exchange. Based on the case law and "simple

common sense," the trial court concluded that Williams's self-created international bills of exchange were not valid legal documents or tender.

{¶ 9} Williams appeals from the trial court's dismissal of his action.

## II. Standard of Review

{¶ 10} A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6), "is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992); *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 16 (2d Dist.). The court must construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff. *Grover* at ¶ 16, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). A motion to dismiss under Civ.R. 12(B)(6) should be granted only where the complaint, so construed, demonstrates that the plaintiff can prove no set of facts entitling him to relief. *Sherrod v. Haller*, 2017-Ohio-5614, 94 N.E.3d 148, ¶ 6 (2d Dist.). "The standard for dismissal under Civ.R. 12(B)(6) is consistent with Civ.R. 8(A), which requires that a complaint 'contain * * * a short and plain statement of the claim [or claims] showing that the [plaintiff] is entitled to relief.' " *Toney v. Dayton*, 2017-Ohio-5618, 94 N.E.3d 179, ¶ 36 (2d Dist.).

{¶ 11} "An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Duer v. Henderson*, 2d Dist. Miami No. 2009 CA 15, 2009-Ohio-6815, ¶ 68, quoting *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. This means the appellate court "must independently review the complaint to determine whether dismissal is appropriate." *Boyd v. Archdiocese of Cincinnati*, 2d Dist.

Montgomery No. 25950, 2015-Ohio-1394, ¶ 13, quoting *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 60 (8th Dist.).

{¶ 12} In conducting that review, we are "bound to assume that the facts pleaded in the complaint are true, but the same does not apply to conclusions of law that the pleader contends are proved by those facts." *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 8 (2d Dist.). We are not to consider "unsupported conclusions that may be included among, but not supported by, the factual allegations of the complaint." *Boyd* at ¶ 13, quoting *Wright v. Ghee*, 10th Dist. Franklin No. 01AP-1459, 2002-Ohio-5487, ¶ 19.

{¶ 13} Although the rule itself states that matters to be considered on a Civ.R. 12(B)(6) motion are limited to those that appear within the relevant pleading, material incorporated within a complaint is part of that pleading. *Boyd* at ¶ 14, citing *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, 673 N.E.2d 1281, fn. 1, (1997) ("Material incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss."). Such material includes not only exhibits to a complaint, but also written instruments "upon which a claim is predicated," regardless of whether such material actually is attached to the pleading. *Id.*

### III. Williams's Claim Based on his "International Bill of Exchange"

{¶ 14} The trial court dismissed Williams's complaint, finding, as a matter of law, that Williams's purported international bills of exchange were not legal tender and, consequently, he did not state a viable claim that the City erred in failing to accept them. We agree with the trial court that Williams's self-prepared international bills of exchange were not legal tender and, as a matter of law, Williams did not state a viable claim that

the City erred in failing to accept them as payment.

{¶ 15} At the outset, 12 U.S.C. 95a does not provide a basis for Williams's claim. That section formerly granted, in time of war, authority for the president to regulate transactions in the foreign exchange of gold or silver coin or bullion, currency or securities, and transfers of property in which any foreign country or a foreign national has any interest. *See* former 12 U.S.C. 95a(1)(A) and (B). The section upon which Williams relies, former 12 U.S.C. 95a(2), provided:

> Any payment, conveyance, transfer, assignment, or delivery of property or interest therein, made to or for the account of the United States, * * * shall to the extent thereof be a full acquittance and discharge for all purposes of the obligation of the person making the same; and no person shall be held liable in any court for or in respect to anything done or omitted in good faith in connection with the administration of, or in pursuance of and in reliance on, this section, or any rule, regulation, instruction, or direction issued hereunder.

{¶ 16} 12 U.S.C. 95a was in effect until November 30, 2015. As of December 1, 2015, that section has no content and is entitled "Omitted."[1] In short, Section 95a is no longer valid. Accordingly, Williams now cannot state a claim based on that statute, as a matter of law.

{¶ 17} Williams's international bills of exchange appear to be based on a

---

[1] "Congress omitted § 95a from the United States Code effective December 1, 2015, because 'an identical section exists in 50 U.S.C. § 4305(b)(2) and has since 1941.'" *United States v. Nobrega*, 124 A.F.T.R.2d 2019-6942, 2019 WL 6619853, *6 (D.Me.Dec. 5, 2019), quoting *Walquist v. Commr. of Revenue*, No. 08890-R, 2016 WL 2989259, *2, n.28 (Minn. Tax Ct. May 11, 2016).

"Redemptionist" theory. As the Third Circuit summarized:

> [T]he "Redemptionist" theory * * * propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name * * *.

*Monroe v. Beard*, 536 F.3d 198, 203, fn. 4 (3d Cir.2008).

{¶ 18} The federal district court in Connecticut further explained:

> Another tenet of the Redemptionist theory is that when the United States Government "pledged the strawman of its citizens as collateral for the country's national debt," it created an "exemption account" for each citizen, identified by each person's Social Security number. When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts. Moreover, each citizen's exemption account is virtually bottomless, meaning that those who understand this theory — and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as

"redemption" — never have to actually pay for anything.

(Citations omitted.) *McLaughlin v. CitiMortgage, Inc.*, 726 F.Supp.2d 201, 210 (D.Conn.2010).

{¶ 19} Courts have uniformly rejected arguments that self-prepared documents created under the Redemptionist theory or one of its corollaries are valid legal tender. *See, e.g.*, *Bank of New York v. Markos*, 10th Dist. Franklin No. 05AP-906, 2006-Ohio-2073, ¶ 18 (self-prepared international bill of exchange was not a valid payment of mortgage debt); *Vachon v. Reverse Mtge. Sols., Inc.*, Case No. EDCV 16-02419-DMG (KES), 2017 WL 6628103, *6 (C.D.Cal. Aug. 11, 2017); *Bryant v. Washington Mut. Bank*, 524 F.Supp 2d 753 (W.D. Va. 2007); *In re Hill*, Case No. 1:14-bk-15544-SDR, 2015 WL 5575499, *3 (Bankr.E.D.Tenn. Sept. 18, 2015). Rather, they have consistently found that similar bills of exchange supposedly drawn on treasury accounts are no more than "worthless piece[s] of paper." *Bryant* at 760; *see also, e.g.*, *U.S. Bank, N.A. v. Phillips*, 366 Ill.App.3d 593, 852 N.E.2d 380 (2006).

{¶ 20} Viewing Williams's complaint, including the attached documents, in the light most favorable to him, Williams presented two self-prepared international bills of exchange drawn on the United States Treasury to the City to pay his water bills. We find no law, including R.C. Chapter 1303 (Negotiable Instruments), indicating that Williams's documents constituted valid legal tender or negotiable instruments. Additionally, courts throughout the country have reached the same conclusions with similar documents. The trial court thus did not err in likewise determining, as a matter of law, that Williams's international bills of exchange were not valid legal documents or tender. We conclude that Williams thus failed to state a claim against the City for failing to accept his purported

international bills of exchange as payment for his water bills.

## IV. Conclusion

**{¶ 21}** The trial court's judgment will be affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Travis L. Williams
Martin W. Gehres
Hon. Steven K. Dankof